J. B. LEADER v. FARMERS LOAN & TRUST CO., Appellant.

Attachment: WRONGFUL LEVY: INSTRUCTION. This is an action for the wrongful attachment of personal property claimed by plaintiff under a sale from defendants debtor prior to the levy. The evidence tended to show that plaintiff had contracted to buy the farm on which the debtor resided, his interest in the crops and the personalty in question. Thereafter plaintiff, through his employees, used the personalty in caring for the crops, and subsequent to the claimed sale to him and prior to the levy, the debtor had gone to another state. *Held*, that the instruction that to retain possession after a sale so as to render the property subject to the debts of the seller, the possession must be actual and of the kind and character before the sale, was not erroneous; as conveying the idea that the debtor was not in possession of the property at the time of the levy, simply because he had gone to a foreign state.

**Same:** EVIDENCE: PREJUDICE. Where plaintiff as a witness had detailed the facts showing that he took possession by putting his employees in charge of the crops, using the personalty in question, no prejudice arose from permitting him to state when he took possession of the farm.

**Same.** Exclusion of evidence that plaintiff's contract for the purchase of the farm had been cancelled by decree of the court was proper, since the action in no manner involved his right to the attached personalty.

**Sale of attached property:** RETENTION OF POSSESSION. Where it appeared that the seller of horses, kept in a pasture, had no control of the pasture after the sale, and exercised no apparent control over the horses, the seller could not be said to retain possession of the horses.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

WEDNESDAY, OCTOBER 20, 1909.

ACTION to recover damages for the wrongful attachment of plaintiff's property, in an action instituted by this defendant against William and Charles Sapp, from whom plaintiff claims to have acquired title to the property prior to the levy of the attachment. There was a verdict for the plaintiff, and from the judgment thereon defendant appeals.—*Affirmed.*

*J. A. Prichard* and *E. P. Farr,* for appellant.

*Shull, Farnsworth & Sammis,* for appellee.

McCLAIN, J.—There was evidence tending to show that in the latter part of May, 1907, the plaintiff, who resided in Nebraska, entered into an arrangement with Joseph Ross and his wife, Retta Ross, who resided on a farm near Castana, in Monona County of this State, for the acquisition by exchange of the farm on which the Rosses

resided, the title to which was in Mrs. Ross, and which was known as the "Ross Farm," and that at this time plaintiff purchased from William Sapp, a son of Mrs. Ross by a former marriage, who with his wife resided with the Rosses on the farm, an interest in the crops then growing on said farm. About June 19 following, some arrangement was made between plaintiff and the Rosses for the exchange of deeds. Plaintiff claims that at this time he also purchased certain horses and agricultural implements kept on the farm and belonging to William Sapp. He further claims that about July 1, William Sapp came to Nebraska, and that on or about July 20 he made a further purchase from said Sapp of certain horses and harness, which were also then on the Ross farm. On the 30th of the same month the sheriff of Monona County seized the agricultural machinery, horses, and harness on the Ross farm which plaintiff claims to have purchased from William Sapp, levying an attachment thereon as the property of said William Sapp in a suit instituted by the defendant in this case against William Sapp and Charles Sapp, and the present action is to recover damages for this levy, which is alleged to have been wrongful.

The question is whether there had been such change of possession of the property levied upon between the time of the alleged sale thereof by William Sapp to plaintiff and the time of the levy that the vendor no longer retained actual possession thereof, so that, under the provisions of Code, section 2906, a recorded instrument of sale was not necessary to defeat the subsequent levy upon the property as belonging to the vendor. As bearing upon this question of fact there was evidence tending to show that plaintiff, through his employees, cultivated and cared for the crops on the Ross farm, using for that purpose the agricultural implements and some of the horses purchased

1. ATTACHMENT: wrongful levy: instruction.

from William Sapp, and that William Sapp himself was not on the farm, and had no connection with the management of it after the 5th of July, although his wife continued to reside with the Rosses on the farm until after the levy was made. With reference to this statement of facts appellant complains of an instruction in which the jury was told: "When you come to determine whether or not the Sapps retained actual possession of this property after the sale to plaintiff, if any such sale you find there was, you are instructed that to retain actual possession of property after a sale so as to make the property subject to the debts of the seller, the possession must be actual, of the same character and kind of possession as had before the sale." The argument is that, as it was conceded William Sapp had personally gone to Nebraska, the jury might have found that he was not in possession of the property at the time of the levy by the same character and kind of possession as he had before the sale, although as a matter of fact there had been no actual change of possession from him to plaintiff. But we think the instruction was pertinent to the evidence. If, as appears, Sapp had prior to the sale of the machinery and horses to plaintiff been using them on the farm for the cultivation of crops, and after such sale ceased to use them in that manner and for that purpose, and they were then used by the employees of plaintiff cultivating and caring for the crops which plaintiff had purchased from Sapp, the possession of Sapp did not continue to be of the same character and kind as that which he had before had, although there was no actual change in the place where the machinery and horses were being kept. In other words, the relation of Sapp to the property may have been so changed by his sale of the crops, and by further absenting himself from the farm, and any control over the crops or machinery and horses, that he could be found not to have retained

possession of the machinery and horses. The instruction properly called the attention of the jury to this matter, and we think was not erroneous or misleading. There was no further instruction asked on the subject by defendant, and of the instruction as given we think defendant has no ground of complaint. Plaintiff may have been in the possession of the property through his employees, although not personally on the Ross farm, and Sapp may have lost his possession by reason of the change in the control and use of the property. This was the question left to the jury for decision, and we think there was no error in the method in which the question was submitted to the jury for their determination.

Error is also alleged in the refusal of the court to sustain defendant's objection to a question asked of plaintiff as a witness as to when he took possession of the farm; but, as the answer specified the facts detailed by plaintiff as showing his taking of possession by putting his employees in charge of the crops with the use of the machinery and horses, we think no possible prejudice could have resulted to the defendant from the ruling.

2. SAME: evidence: prejudice.

It is also contended that the court erred in rejecting evidence offered for defendant to show that Mrs. Ross, in July, 1907, instituted an action against this plaintiff to rescind the alleged contract for sale of the farm, in which a decree was entered defeating plaintiff's alleged title. But as this action did not relate to the sale of the crops from Sapp to plaintiff, and had no bearing upon the fact of plaintiff's possession, we think the ruling was correct. Plaintiff's possession of the property claimed by him did not depend in any way upon his title to the Ross farm, but was predicated solely upon his purchase of the crops from Sapp, and his use of the machinery and horses, through his employees, in cultivating and caring for said crops.

3. SAME.

Something is said in argument with reference to the possession of the horses purchased by plaintiff from Sapp on July 20 in Nebraska; the claim being that these animals remained in the pasture on the Ross farm, and that plaintiff exercised no control whatever with reference to them until after they were included in defendant's levy. But under the statute the question is whether Sapp, the vendor, retained possession, and as to that there is no evidence whatever. It does not appear that he had control of the pasture in which the animals were kept, nor exercised any apparent power of control or disposal as to the animals.

4. SALE OF ATTACHED PROPERTY: retention of possession.

Finding no error in the record, the judgment is *affirmed.*